

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

**J & J SPORTS PRODUCTIONS, INC.,**

**Plaintiff,**

- against -

**NOSHERWAN USMAN, individually and d/b/a
RED MIST, and RED MIST, INC., an unknown
business entity d/b/a RED MIST,**

**Defendants.**
----------------------------------------------------------------x

RD 12/12/19
SMH.

<u>OPINION & ORDER</u>

**17-cv-5335 (NG) (VMS)**

**GERSHON, United States District Judge:**

Plaintiff J & J Sports Productions, Inc. ("J & J Sports") brings claims under 47 U.S.C. §

605 and 47 U.S.C. § 553 against defendants Nosherwan Usman ("Usman") and Red Mist, Inc.

("Red Mist"). Plaintiff and defendants have moved for summary judgment on liability and

damages. For the reasons set forth below, plaintiff's motion is granted and defendants' motion is

denied.

### I.    Factual Background

The following facts are undisputed unless stated otherwise. Plaintiff J & J Sports is a closed

circuit distributor of sports and entertainment programming. Defendant Red Mist, Inc. owns and

operates the commercial establishment Red Mist, a hookah lounge located in Brooklyn, New York.

Defendant Usman is a director and chief executive officer of Red Mist, Inc.

On September 13, 2014, a sports program titled "*Mayhem,*" *Floyd Mayweather, Jr. v.

Marcos Rene Maidana, II WBC World Lightweight Championship Fight Program,* (the

"Program") was telecast nationwide. The Program included the main fight between Mayweather

and Maidana as well as other undercard fights. Plaintiff had been granted exclusive commercial

distribution rights for the Program. In order to safeguard against the Program's unauthorized

distribution, the original satellite transmission of the Program was either electronically coded or scrambled and was not available to the general public. A commercial establishment could receive the Program only if plaintiff authorized the establishment to receive an unscrambled version of the signal. In an effort to enforce its exclusive distribution rights, J & J Sports retained investigators to detect and identify signal pirates.

It would have cost a commercial establishment the size of Red Mist $2,200 to lawfully broadcast the Program. Plaintiff did not authorize defendants to broadcast the Program at Red Mist, and defendants did not purchase a commercial license from plaintiff. Despite defendants' failure to contract with plaintiff, three investigators observed the Program being broadcast at Red Mist on September 13, 2014.

## II.    Legal Standard

Summary judgment is appropriate where the "movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Supreme Court has clarified, however, that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

2

## III.  Discussion

Section 605 of the Federal Communications Act ("FCA") provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 553 of the FCA provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). A plaintiff may recover only under one of these provisions for a single violation. *J & J Sports Prods., Inc. v. Mari*, 2012 WL 1004842, at *3 (E.D.N.Y. Mar. 23, 2012). "Where both statutes are violated, the plaintiff may recover under only one statute, and the court should award damages under Section 605," which awards higher damages. *J & J Sports Prods., Inc. v. Gomez*, 2019 WL 4744229, at *4 (E.D.N.Y. Sept. 29, 2019).

When at least part of an event's transmission was accomplished by satellite, "courts in this circuit have held that . . . the defendants' interception of the Event violates 47 U.S.C. §§ 553(a)(1) and 605(a).'" *Joe Hand Promotions, Inc. v. La Nortena Rest. Inc.*, 2011 WL 1594827, at *2 (E.D.N.Y. Mar. 28, 2011), *report and recommendation adopted*, 2011 WL 1598945 (E.D.N.Y. Apr. 27, 2011). Here, plaintiff has presented evidence of a satellite transmission, and plaintiff's claims are therefore appropriately considered under Section 605.[1]  *Id.*

---

[1] Defendants argue that there is no evidence of the means of transmission, but do not address the Gagliardi Affidavit's statement that "*the interstate satellite transmission* of the Program was electronically coded or scrambled . . . ." Gagliardi Affidavit, ¶ 11 (emphasis added).

## A. Red Mist's Liability

Because plaintiff owned the exclusive commercial distribution rights for the Program, it is impossible for defendants to have broadcast the Program legally without having entered into a licensing agreement with plaintiff. It is undisputed that defendants did not enter into such an agreement, yet the Program was still displayed at the establishment on September 13, 2014. These undisputed facts are sufficient to establish Red Mist's liability under Section 605. *See, e.g., J & J Sports Prod., Inc. v. Leon*, 2019 WL 1320277, at *4 (E.D.N.Y. Mar. 22, 2019) (collecting cases).

Defendants' statute of limitations argument is unavailing. Because Section 605 does not contain a statute of limitations, defendants invite the court to apply the two-year statute of limitations of the Wiretap Act, codified at 18 U.S.C. § § 2510–2522. But courts in this Circuit apply the three-year limitations period from the Copyright Act, 17 U.S.C. § 507(b), in cases brought under Section 605. *See J & J Sports Prods., Inc. v. Nest Rest. & Bar, Inc.*, 2018 WL 4658800, at *1 n.1 (E.D.N.Y. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4179452 (E.D.N.Y. Aug. 31, 2018) (collecting cases). Plaintiff filed its lawsuit on September 12, 2017, less than three years after the Program was shown at the establishment. Therefore, plaintiff's lawsuit is timely, and plaintiff is entitled to damages.

## B. Usman's Liability

As for the individual defendant, Nosherwan Usman, "[e]stablishing individual liability under Section 605(a) requires a showing either of contributory infringement, which arises when the individual authorize[d] the violations, or vicarious liability, which arises when the individual had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *J & J Sports Prod., Inc. v. McAdam*, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015) (internal quotation marks omitted). Plaintiff

argues that Usman is vicariously liable because he had a "right and ability to supervise the infringing activities and had an obvious and direct financial interest . . . ." *Id.* I agree.[2]

As a director and chief executive officer, I find that Usman had a "right and ability to supervise the infringing activity." *See J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 2019 WL 1274693, at *3 (E.D.N.Y. Mar. 20, 2019) ("It is hard to imagine a CEO without control over his or her company."). Regarding the "obvious and direct financial interest" requirement, courts have "looked to whether 'the plaintiff showed direct financial gain, such as a cover charge on the night of the event[,] ... [or] strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast.'" *Id.* Here, two out of three of plaintiff's investigators were charged a cover charge on the night in question.[3] While Usman asserts in his declaration that there was "no change in pricing or cover charge specifically attributable to the alleged exhibition of the program," he also claims that he was not personally present at the time of the alleged incident, which raises a question as to whether he can competently testify to this issue. *See* Fed. R. Civ. P. 56; Usman Declaration, ¶ 3. In any event, I am not persuaded that Usman's bare assertion regarding the purpose of the cover charge creates an issue of material fact that would preclude granting summary judgment against Usman, especially since Usman does not dispute that there was in fact a cover charge on the night of the broadcast.[4] *See*

---

[2] Because plaintiff does not argue contributory infringement, I do not consider whether Usman would also be liable under that theory.

[3] One investigator was charged $5 to enter the establishment; the other was charged $10.

[4] I note that, if I were both to credit Usman's assertion and find that it creates an issue of material fact, which I do not, then I would be precluded from granting summary judgment for either party on the issue of Usman's liability. Defendants, however, have conceded that they do not believe that there are any "real disputed issues of material fact that would necessitate a trial," and have explicitly asked me to grant summary judgment in favor of plaintiff in the event that summary judgment is not granted in favor of defendants. Defs.' Mot. at 14–15.

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."); *Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc.*, 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) ("Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment."). Accordingly, I conclude that the cover charge establishes Usman's "obvious and direct financial interest in the exploitation of the copyrighted materials," and, by the same token, his vicarious liability. *McAdam*, 2015 WL 8483362, at *3. I therefore hold Usman jointly and severally liable with Red Mist for violating Section 605 of the FCA.

## IV. Damages

### A. Statutory Damages

Plaintiff has elected to recover statutory as opposed to actual damages under Section 605. Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), plaintiff is entitled to damages not less than $1,000 and not greater than $10,000 for each violation. In determining statutory damages, courts have taken two approaches: the flat fee method and the per person method. *J & J Sports Prods. Inc. v. Berry*, 2019 WL 3976412, at *3 (E.D.N.Y. Aug. 22, 2019). "The 'flat fee' method considers the amount that the defendant would have paid for authorization to broadcast the Event," in this case, the licensing fee defendants' would have had to pay to view the Program lawfully. *Id.* The per person method calculates damages "equal to the amount the patrons would have collectively paid to view the Event at home." *Id.* Courts generally award the higher of the two amounts. *Id.* Here, plaintiff argues that it should be awarded three times the licensing fee for a total statutory damages award of $6,600. Alternatively, plaintiff argues it should be awarded $3,400 under the per-person method—awarding $100 for the maximum number of attendees counted, 34. I reject both requests.

Regarding the flat fee method, this court "sees no reason [to] deviate from typical decisions in the Second Circuit," and will therefore award $2,200—the cost of the licensing fee for an establishment the size of Red Mist. *J & J Sports Prods., Inc. v. Orellana*, 2019 WL 1177719, at *5 (E.D.N.Y. Mar. 13, 2019). As for the per-person calculation, plaintiff has not presented any evidence regarding what an individual would be charged to watch the broadcast in his or her home. Therefore, the court declines to award $100 per person, and "assumes a $54.95 residential fee in light of evidence presented by Plaintiff in other cases." *McAdam*, 2015 WL 8483362, at *4 (collecting cases). An award of $54.95 per person amounts to a total award of $1,868.30. Because the flat-fee method yields the higher result, plaintiff is entitled to $2,200 in statutory damages.

## B. Enhanced Damages

Plaintiff requests $25,000 in enhanced damages pursuant to Section 605(e)(3)(C)(ii). Enhanced damages under Section 605 are within the court's discretion, and the court is permitted to award up to $100,000 in additional damages if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* Courts in this Circuit have routinely found that, because the program was encrypted, and could not be viewed unless unlawfully intercepted, willfulness is satisfied. *See, e.g., J & J Sports Prods. Inc. v. Johnny's Rest.*, 2016 WL 8254906, at *5 (E.D.N.Y. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 591143 (E.D.N.Y. Feb. 14, 2017) (collecting cases).

As for whether the violation was "for purposes of direct and indirect commercial advantage or private gain," courts have considered whether there is evidence: "of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Id.* at *6. Plaintiff does not argue that any of the first

7

three factors are satisfied. As for the fourth factor, plaintiff's investigator provided a photograph of an advertisement of the Program on a chalkboard outside the establishment. Usman, in his declaration, asserts that there was "no advertisement that [the Program] was going to be shown there," but in the following sentence states that "I did not authorize a sign advertising the event and do not know who may have wrote on such a sign." Usman Declaration, ¶ 3. Given the contradictory nature of these statements, as well as Usman's contention that he was not at Red Mist on the night in question, I do not find that Usman's assertions create an issue of material fact as to whether there was advertising, and will treat this factor as satisfied. *See Courchevel 1850 LLC v. 464 Ovington LLC*, 2019 WL 1492347, at *4 (E.D.N.Y. Mar. 31, 2019) ("The mere existence of a scintilla of evidence in support of the non-movant will be insufficient to defeat a summary judgment motion." (internal quotation marks omitted)); *D'Amico*, 132 F.3d at 149; *Transflo Terminal Servs., Inc.*, 248 F. Supp. 3d at 399. Finally, with respect to the fifth factor, there was a cover charge on the night in question, as noted above. Accordingly, I find that enhanced damages in addition to statutory damages are warranted.

"Courts have taken varying approaches to determining the amount of enhanced damages to award. While some have awarded treble damages for willful violations, others have awarded an amount two times the statutory damages, an amount equal to the statutory damages, or no enhanced damages at all." *J & J Sports Prods., Inc. v. Guncay*, 2018 WL 6313210, at *5 (E.D.N.Y. Oct. 17, 2018), *report and recommendation adopted*, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018). In light of the violation being willful, the Program being advertised, and there being a cover charge, I find that an enhanced damages award double the amount of the statutory damages award, or $4,400, is appropriate. Such an award will serve as an adequate deterrent against future piracy, and is generally in accord with other cases in this Circuit where at least one of the enhanced damages

factors is satisfied. *See id.* (awarding enhanced damages two times the statutory damages award when there was a $20 cover charge); *J & J Sports Prod., Inc. v. Reynolds*, 2019 WL 1299408, at *4 (E.D.N.Y. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019) (awarding two times the statutory damages award when defendant advertised the program, collected a cover charge, and there were substantial unlawful monetary gains); *McAdam*, 2015 WL 8483362, at *5 (awarding two times the statutory damages award when there were over 100 patrons present, a cover charge, and the program was advertised); *J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, 2014 WL 4467774, at *10 (E.D.N.Y. Sept. 9, 2014) (awarding two times the statutory damages award when there was an $8 cover charge); *J & J Sports Prods., Inc. v. Can's Bar & Grill, Inc.*, 2015 WL 3605662, at *6 (E.D.N.Y. June 3, 2015) ("Recent case law holds that the appropriate amount for enhanced damages is double the statutory damages.").

## V.     Costs and Attorneys' Fees

Section 605(e)(3)(B)(iii) requires the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff is therefore entitled to reasonable attorneys' fees. Plaintiff shall submit its motion for costs and attorneys' fees by January 10, 2020.

## VI.    Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied. The Clerk of Court is directed to enter judgment accordingly: Plaintiff is awarded $2,200 in statutory damages and $4,400 in enhanced damages against defendants Red Mist and Usman, jointly and severally. By January 10, 2020, plaintiff shall submit its motion for costs and attorneys' fees.

SO ORDERED.

/s/ *Nina Gershon*
_____
NINA GERSHON
United States District Judge

December 11, 2019
Brooklyn, New York